# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**NICOLE WRAY AND ZACHARY**                           **PLAINTIFFS**
**STERDIVANT**

**v.**                        **CIVIL ACTION NO. 3:18-cv-622-DPJ-FKB**

**GEICO INDEMNITY COMPANY,**                  **DEFENDANTS**
**GEICO CASUALTY COMPANY, AND**
**JOHN DOES**
**I-III**

## <u>MEMORANDUM IN SUPPORT OF MOTION TO COMPEL 30(B)(6)</u>
## <u>DEPOSITION OF GEICO INDEMNITY COMPANY AND FOR SANCTIONS</u>

COMES NOW, the Plaintiff, Nicole Wray, and files this her Combined Memorandum in

Support of Plaintiff's Motion to Compel 30(b)(6) Deposition of GEICO Indemnity Company and

for Sanctions, and in support thereof would show as follows:

### <u>Introduction</u>

This matter revolves around GEICO Indemnity Company's (GEICO) denial of Plaintiff's

claim as it relates to medical treatment Plaintiff received in connection with injuries sustained in

a hit-and-run collision.  As the basis for denying Plaintiff's claim, GEICO set forth two reasons

for refusing to consider the medical treatment incurred by Plaintiff – an alleged "large gap in

treatment" between Plaintiff's second Emergency Room visit and commencement of treatment

with another doctor, in addition to "overlapping vehicle losses." <u>See</u> Exhibit 1.

Plaintiff first noticed GEICO's 30(b)(6) deposition on May 25, 2020. <u>See</u> ECF Doc. 56.

The first deposition was continued upon agreement due to the deponent not being available on

the noticed date. Plaintiff again noticed the 30(b)(6) deposition on July 7, 2020. <u>See</u> ECF Doc.

59.  Counsel for Plaintiff showed up for this deposition, and no motion to quash or otherwise

limit the deposition was filed. However, no corporate representative appeared despite there having been no motion to quash or other objection filed with the Court.  Plaintiff again noticed the deposition – this time on August 5, 2020.  <u>See</u> ECF Doc. 61. However, after deposing GEICO's adjuster days prior to the scheduled date of the 30(b)(6) deposition, and as a result of Plaintiff ascertaining that numerous documents had not been produced in discovery which had previously been ordered by the Court, Plaintiff was again thwarted in her attempt to depose GEICO.  Following that development, Plaintiff obtained a discovery conference with the Court, which verbally ordered GEICO to produce the claims manual that the GEICO adjuster had referenced having used in adjusting the claim in addition to other portions of the claim file. After that information was finally provided, counsel came to an agreement on October 22, 2020 that the deposition would be conducted on November 10, 2020, and it was noticed for a fourth time. <u>See</u> ECF Doc. 73.

Notably, during this more-than-five (5) month period of time from the first 30(b)(6) notice of deposition, the topics of inquiry set forth in the notice were identical.  And also importantly, no objection was ever lodged as to any of the topics, nor was there ever any indication made that the corporate representative would be unable to testify as to any of the enumerated topics.

Given that GEICO had previously cited as a basis for its decision two reasons – "overlapping vehicle losses" and a "large gap in treatment" – Plaintiff sought clarity from GEICO, as set forth in its deposition notice, as to those stated reasons. During the deposition, Plaintiff sought to ascertain what constitutes a large gap in treatment, how is it ascertained, what qualifies as being too large of a gap in order for it to be considered related, are there any objective criteria by which this is ascertained.  Despite repeated questions on these topics, the

corporate representative gave evasive and non-responsive answers to each and every question posed.

The same can be said for GEICO's testimony as to "overlapping vehicle losses." Again, despite being an area of inquiry about which GEICO was supposed to testify, the corporate representative was unprepared to offer any meaningful testimony in relation to this – instead, only offering self-serving answers claiming that despite stating that "overlapping vehicle losses" were a basis of refusing to consider the medical treatment that this was not actually a reason that impacted GEICO's decision.[1]

In addition, despite direct questioning as to whether GEICO had based its decision to deny Plaintiff's medical treatment on anything <u>other</u> than what was listed in GEICO's letter pointing to "overlapping vehicle losses" and a "large gap in treatment," GEICO refused to respond, instead giving non-answers to questions posited by Plaintiff.

## <u>Argument</u>

I.     *<u>The Duties of a Corporation in Designating a 30(b)(6) Witness</u>*

Under F.R.C.P. Rule 30(b)(6), an organization named in a Rule 30(b)(6) notice of deposition "shall designate one or more officers, directors, or managing agents, ... and may set forth, for each person designated, the matters on which it will testify." F.R.C.P. Rule 30(b)(6). The rule further states that "[t]he persons that are designated shall testify as to matters <u>known or reasonably available to the organization</u>." *Id.* (emphasis added). "A Rule 30(b)(6) witness need

---

[1] GEICO, having since realized that Plaintiff did not have "overlapping vehicle losses" (since it was improperly asserting subsequent property-damage only claims as a basis for denying medical treatment for Plaintiff's injuries), has retreated from that stance and claims now that the "large gap in treatment" was the only basis for refusing Plaintiff's medical treatment.

not have personal knowledge of the designated subject matter." *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 688 (S.D. Fl. 2012) citing <u>Federal Civil Rules Handbook</u>, 2012 Ed., at p. 838 ("the individual will often testify to matters outside the individual's personal knowledge"). In fact, "[t]he duty to prepare a Rule 30(b)(6) witness goes beyond matters personally known to the designee or to matters in which the designated witness was personally involved." *Id.*

When a person is selected who does not have personal knowledge of the matters about which the noticing party is interested, <u>the designee must be prepared by the organization so that he or she may give knowledgeable answers</u>. *W Holding Co v. Chartis Ins. Co. of Puerto Rico.,* 300 F.R.D. 43, 46 (D.P.R. 2014) (emphasis added). Thus, a corporation or other organization issued a Rule 30(b)(6) notice of deposition has a duty to make a conscientious, good-faith effort to designate persons having knowledge of the matters sought, and to prepare those persons so that they can answer the examining party's questions <u>fully, completely, and unevasively</u>. *Wultz v. Bank of China, Ltd.,* 293 F.R.D. 677, 680(S.D.N.Y. 2013); *Booker v. Mass. Dept. of Public Health*, 246 F.R.D. 387 (D. Mass. 2007). "A corporation is expected to create an appropriate witness or witnesses from information reasonably available to it if necessary." *QBE Insurance Corp.*, 277 F.R.D. 676, 689.[2]

---

[2] Explaining the rationale behind the high bar for preparing a corporate representative to testify pursuant to Rule 30(b)(6), the court in *QBE Ins. Corp.* pointed out that "[p]reparing a Rule 30(b)(6) designee may be an onerous and burdensome task, but this consequence is merely an obligation that flows from the privilege of using the corporate form to do business." *QBE Ins. Corp.,* at 676, 688 (emphasis added); *Best v. Marix Servicing, LLC*, 2013 WL 12100762 (N.D. Ga. 2013).

As explained in *QBE Insurance Corp.,* "Not only must the designee testify about facts within the corporation's collective knowledge, including the results of an investigation initiated for the purpose of complying with the 30(b)(6) notice, <u>but the designee must also testify about the corporation's position, beliefs and opinions.</u>" *QBE Insurance Corp.*, 277 F.R.D. 676, 689; *Estate of Thompson v. Kawasaki Heavy Industries, Ltd.,* 291F.R.D. 297 (N.D. Iowa 2013); *Brazos River Authority v. GE Ionics, Inc.,* 469 F.3d 416 (5th Cir.2006). Through the 30(b)(6) deponent "[t]he corporation must provide its interpretation of documents and events." *U.S. v. Taylor*, 166 F.R.D. 356, 361 (1996). "The designee, in essence, represents the corporation just as an individual represents him or herself at a deposition." *Id*.

Explaining the depth of the requirement in preparing a 30(b)(6) representative, the Court in *Taylor* explained that the corporation:

> [M]ust prepare deponents by having them review prior fact witness deposition testimony as well as documents and deposition exhibits…. Rule 30(b)(6) explicitly requires [the corporation] to have persons testify on its behalf as to all matters known or reasonably available to it and, therefore, implicitly requires such persons to review all matters known or reasonably available to it in preparation for the Rule 30(b)(6) deposition. **This interpretation is necessary in order to make the deposition a meaningful one and to prevent the "sandbagging" of an opponent by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial. This would totally defeat the purpose of the discovery process.**

*U.S. v. Taylor*, 166 F.R.D. 356, 361 (1996).

While the rule does not expressly require the designee to personally review all information available to the corporation – it must prepare someone (using whatever means required) such that the witness can "provide binding answers under oath." *QBE Ins. Corp.,* at 676, 691. "[A] corporation served with a Rule 30(b)(6) notice of deposition has a duty to

'produce such number of persons as will satisfy the request [and] more importantly, prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation.' *Poole ex rel. Elliot v. Textron, Inc.*, 192 F.R.D. 494, 504 (D. Md. 2000). "Counsel for the entity should prepare the designated witness to be able to provide meaningful information about any designated area(s) of inquiry." *QBE Ins. Corp.,* at 676, 691. citing ABA Standards, 19(f) (Duty to Prepare the Witness).

Corporations "are not permitted to simply declare themselves to be mere document-gatherers. They must produce live witnesses who have been prepared to provide testimony to bind the entity and to explain the corporation's position." *Id.* citing *Wilson*, 228 F.R.D. at 531; *Great Am.*, 251 F.R.D. at 542 (entitled to "corporation's position"). A corporation cannot wait "to review previous deposition testimony and documents previously produced in discovery after the deposition has concluded to then determine its corporate position. The time for preparation is now [prior to the deposition]." *U.S. v. Taylor*, 166 F.R.D. 356, 361 (1996).

II.      *The Obligations of a Corporation If It Objects or Is Unable to Provide a Witness to Testify to the Listed Topics of Inquiry.*

"Despite the potentially difficult burdens which sometimes are generated by Rule 30(b)(6) depositions, the corporation is not without some protection, as it may timely seek a protective order or other relief." *QBE Ins. Corp.,* at 676, 691; *C.F.T.C. v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 772 (9th Cir.1995). In order to prevent an unfair advantage to be gained by getting two-bites at the apple when the witness gets the benefit of being asked the question without being prepared to actually answer the question, however, courts have explained that "[a] corporation which expects its designee to be unprepared to testify on any relevant, listed topic at the corporate representative deposition should advise the requesting party of the designee's

limitations before the deposition begins." *QBE Ins. Corp.,* at 676, 691; *Calzaturficio*, 201 F.R.D. at 39.

As previously noted, this was the fourth attempt to depose GEICO's corporate representative, and GEICO was in possession of the enumerated topics for the 30(b)(6) deposition more than five months prior to the deposition was actually taken. At no point during this time did the topics of inquiry change, meaning Defendant had more than five (5) months to prepare a corporate representative to give thorough, accurate, and binding answers to those areas of inquiry set forth in Plaintiff's notice.

Despite these facts, no objections to the 30(b)(6) notice were brought forward, nor was a motion for protective order filed before the deposition. As explained in *Talon Transaction Technologies, Inc. v. StoneEagle Servs. Inc.,*:

> When a Rule 30(b)(6) deposition notice references multiple topics, the party named in the deposition notice **must either move for a protective order regarding each topic <u>or</u> designate a person to testify regarding each topic**. Failing to appear and testify as to designated topics for a Rule 30(b)(6) deposition is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c). And a pending motion for protective order only protects a party from designating a witness to appear and testify as to the particular topics addressed in the pending motion.

No. 3:13–cv–902–P, 2014 WL 6819846, at *3 (N.D.Tex. Dec.4, 2014)(emphasis added)(citations omitted).

Instead of properly filing a motion for protective order as required by law, the 30(b)(6) designee who GEICO chose to testify was tantamount to a non-appearance in that he was unwilling to provide binding, substantive answers to Plaintiff's questions. He instead chose to

repeatedly provide evasive, non-responsive answers to matters which GEICO was legally obligated to respond. And at no point during the five (5) month time period that Defendant's were in possession of the 30(b)(6) topics did Defendant raise any issue as to the topics of inquiry – not as to their scope, nor to the substance of the topics of inquiry, nor to the information being sought not being known or knowable to the corporation. Instead, GEICO's corporate representative was selectively prepared to give repeated mantras in the form of canned and non-responsive answers while avoiding providing binding and substantive answers to questions posed by Plaintiff.

III.     _GEICO Refused to Respond to Repeated Questions Related to the Claimed "Large Gap" In Treatment, Whether as to Ms. Wray's Claim or Generally Speaking_

> **Q.** Okay. I'm trying to get the position of GEICO as far as this gap that GEICO is alleging. When does -- after an ER visit, when does a person typically obtain treatment following an ER visit?
>
> **MS. MALATESTA:** Object to the form of the question.
>
> **Q. (By Mr. Hamilton)** How much time?
>
> **MS. MALATESTA:** Object to the form of the question. You can answer.
>
> **A.** I can't answer hypothetical questions. That is a hypothetical question. She reviewed this with her background and training and the supervisor and the decisions were made that were made to make the offer.

_Exhibit 2, Deposition of 30(b)(6) Representative for GEICO, at p. 40-41._

….

> **Q.** (By Mr. Hamilton) And again, I've tried to ask you to delve into that as far as the reasoning. And your response as GEICO, the 30(b)(6) corporate representative is, that's just the decision the

adjuster made. And I'm -- so I'm trying to get GEICO's rationale for why it did not pay for that treatment?

**A.** Yeah, and I'm not a fact witness. I'm here to testify about the claim and that's what I'm doing. I did not negotiate this.

*Id*. at p. 50-51

….

**Q.** But I'm trying to determine -- you tell me, what is a gap in treatment or more particularly a large gap in treatment as is stated here? What does that mean?

**A.** In this case they determined that the 30 some odd days in not receiving any treatment or medical attention was viewed as a significant gap in treatment. And so they determined, with their expertise and experience, that that would impact the claim.

**Q.** And Ms. Martina indicated in her deposition that one person could review this claim and determine seven days was a gap or one person might review it and determine 30 days was a large gap. Is it fair to say that it's very subjective as far as what constitutes a large gap in treatment?

**A.** Again, I can't hypothesize about that. We're looking at this case under these circumstances with trained people that evaluated it and said there's a gap that impacts the offer.

**Q.** Well, explain to me the rationale behind that. Because otherwise if I -- there has to be some type of indication, otherwise a person could say a day was a gap in treatment that didn't justify paying medical bills incurred after that. So what is GEICO's position about what constitutes a large gap in treatment?

**MS. MALATESTA:** I'm going to object to the form of the question. Asked and answered. But you can answer one more time, Steve.

**A.** These cases are reviewed on an individual basis. Because no case is the same, no treatment is the same, no accident is the same. And they determined from reviewing everything together that the

gap in treatment was significant and affected what would be offered on the case.

**Q.** (By Mr. Hamilton) Why? Why in Ms. Wray's case? What made a 36-day gap between an ER visit and beginning treatment with a doctor, what made that a large gap?

**A.** Again, I've answered and I'll answer again, this was the evaluation of a trained adjuster and supervisor for this case.

**Q.** I understand that. But you're GEICO. You are testifying as GEICO. GEICO is who Ms. Wray has a contract with. So I want to understand the grounds for why GEICO determined this was such a large gap in treatment that it was unwilling to pay for that treatment?

**MS. MALATESTA:** And I'm going to object here. Again, he's asked and answered and the soliloquy by counsel is improper on the record. He's asked and answered. If you want to ask him again he'll answer again. But he's answered this question now.

**MR. HAMILTON:** He's not answered it, Christy. And, I mean, you know, and so I want to know -- I have a right to get a determination from GEICO as far as what made this gap in treatment significant in terms of evaluating her claim.

**MS. MALATESTA:** And again, GEICO has already provided the answer to your question, but you can ask it again.

**Q. (By Mr. Hamilton)** So, Mr. Fike, I am -- you had an opportunity to discuss with Ms. Martina -- Ms. Martina is an employee of GEICO. You're here testifying as GEICO today. GEICO has made a decision on Ms. Wray's claim. I'm trying to get the basis for that decision.

So I'm going to again ask you, why was it determined that 36 days constituted a "large gap in treatment" such that GEICO refused to consider those medical bills with Dr. McArther?

**MS. MALATESTA:** And again, object to the form of the question. But, Steve, you can answer.

**A.** This is a particular case with particular facts and circumstances. The adjuster and the supervisor evaluated it, they're trained to do that. And based on these particular facts and circumstances, that was their conclusion.

**MR. HAMILTON:** All right. And I'm going to object to the responsiveness of the answer and we can take this up later on.

*Id*. at p. 41-45.

….

**Q.** Okay. What type of factors does GEICO consider in making a determination of what constitutes too large of a gap in treatment? What type of factors are considered?

**A.** Again, it's a case-by-case basis. We don't -- we can't answer a hypothetical question. It all depends on the circumstances in the case. And so we can only speak to this case here and it was evaluated, looked at, and it was determined by the supervisor and the adjuster that the gap in treatment was significant and impacted the offer.

*Id*. at p. 57.

GEICO's corporate representative engaged in conduct that runs directly contrary to the mandates of Rule 30(b)(6) by claiming that he could not discuss the rationale of the adjuster, because he was not the person to adjust Plaintiff's claim. Courts have repeatedly stated that the 30(b)(6) designee does not have to have any personal knowledge of the matters involved in order to be required to provide full, non-evasive, binding answers to questions. "The persons that are designated shall testify as to matters known or reasonably available to the organization." *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 688. "A Rule 30(b)(6) witness need not have personal knowledge of the designated subject matter." *Id*. "The duty to prepare a Rule 30(b)(6) witness goes beyond matters personally known to the designee or to matters in which the designated witness was personally involved." *Id*.

Furthermore, by refusing to answer repeated questions seeking what criteria that GEICO employs to determine what constitutes a "gap in treatment" or "large gap in treatment," GEICO engaged in behavior that was calculated to frustrate the purpose of the deposition and GEICO's position and support for such position. As explained in *QBE Insurance Corp.,* "Not only must the designee testify about facts within the corporation's collective knowledge, including the results of an investigation initiated for the purpose of complying with the 30(b)(6) notice, <u>but the designee must also testify about the corporation's position, beliefs and opinions.</u>" *QBE Insurance Corp.*, 277 F.R.D. 676, 689; *Estate of Thompson v. Kawasaki Heavy Industries, Ltd.,* 291F.R.D. 297 (N.D. Iowa 2013); *Brazos River Authority v. GE Ionics, Inc.,* 469 F.3d 416 (5th Cir.2006).

IV.     *After Failing to Provide Objective Criteria for GEICO's Decision, GEICO Refused to Acknowledge that Subjective Criteria Were Used*

> **Q.** Okay. And had someone other than Ms. Martina reviewed this, they could have determined that 36 days did not constitute a large gap up in treatment; is that fair to say?
>
> **A.** Some -- yes.
>
> **MS. MALATESTA:** Object to the form of the question.
>
> **Q.** (By Mr. Hamilton) So it's an individual adjuster-by-adjuster determination; is that fair?
>
> **A.** It's not an adjuster-by-adjuster determination. It's based on the facts of that particular loss that's being adjusted.
>
> **Q.** So you're saying that if another adjuster other than Dawn Martina had reviewed this, that adjuster would have come to the same determination or conclusion?
>
> **MS. MALATESTA:** Object to the form of the question. You can answer.

**A.** I can't say that. I mean, again, I can't hypothesize and that's what you're asking me to do. This is case specific with specific facts and circumstances. And in this circumstance, it was considered a large gap in treatment and they made an offer on that basis.

**Q.** (By Mr. Hamilton) And I understand you're saying --

(Indiscernible crosstalk.)

**A.** Sorry.

**Q.** And I understand you're saying that it's specific to the case. But is it also specific to the adjuster as well?

**A.** Clarify.

**Q.** Determining what constitutes a large gap in treatment, is it not just specific to the case but also to the individual adjuster?

**A**. Again, you can't hypothesize about that and speculate, well, what is one person going to do with this case or another? We focus on this case, that's the case we're talking about and that's what matters. And it was determined in this case it was a large gap.

**MR. HAMILTON:** I'm going to object to the responsiveness of the answer.

**Q.** (By Mr. Hamilton) Mr. Fike, I'll ask you again, in addition to it being case specific, isn't it also specific to the adjuster, what they believe constitutes a large gap in treatment?

**MS. MALATESTA:** I'm going to object to the form of the question. Steve, this is this last time we're going to answer this question. You may answer again.

**A.** Again, I can't hypothesize about something like that. We're dealing with this specific case, with this set of facts, with this gap in treatment.

**MR. HAMILTON:** Same objection on my part in terms of the responsiveness of the answer. And again, this is something we'll take up with the judge.

*Id*. at p. 58-60.

Because the GEICO representative failed to provide any objective criteria in response to questioning as to what constitutes a "large gap in treatment," Plaintiff inquired as to whether subjective criteria was used. Again, this line of questioning failed to produce anything responsive in terms of how GEICO arrived at the conclusion that the thirty-six (36) days was a "large gap in treatment" that warranted the refusal of GEICO to consider and pay for that treatment. "[T]he designee must also testify about the corporation's position, beliefs and opinions." *QBE Insurance Corp.*, 277 F.R.D. 676, 689. Additionally, through the 30(b)(6) deponent "**[t]he corporation must provide its interpretation of documents and events**." *U.S. v. Taylor*, 166 F.R.D. 356, 361 (1996). "The designee, in essence, represents the corporation just as an individual represents him or herself at a deposition." *Id.* GEICO claimed that the decision was made by the adjuster and supervisor but refused to provide substantive answers that spell out the criteria by which an insured can know what constitutes a "large gap in treatment." Despite outlining a position that would indicate that the adjuster is the only person who can know the exact rationale behind her decision, GEICO failed to admit that the determination was wholly subjective in nature to that particular adjuster. Again, GEICO's answers – or more aptly non-answers – flew in the face of its obligations under Rule 30(b)(6) and amounted to a bad faith designation.

V.       *GEICO Refused to Testify If There Were Any Reasons Other Than the Alleged Large Gap in Treatment as to Why GEICO Refused to Pay for Ms. Wray's Medical Treatment*

> **Q.** [I]s the sole basis for refusing to pay for Dr. McArther's treatment because of what is alleged to be this gap in treatment?
>
> **A.** Again, that is a -- something that I think you've reviewed with the adjuster. Okay? And I've read the record, and the adjuster and

supervisor, as you note in the letter, have laid out that one of the things of concern is the gap in treatment.

**Q.** Is there any other reason besides the gap in treatment that GEICO did not pay for the medical bills incurred with Dr. McArther and subsequent to that the MRI?

**A.** So the gap in treatment is mentioned and -- but again, the file is looked at as a whole.

**Q.** Are there some type of undisclosed reasons as to why GEICO has not considered that treatment other than this alleged gap?

**A.** The letter outlines the reason for the evaluation to include the gap in treatment.

**Q.** Okay. The letter also says overlapping vehicle losses. So was that a reason why Dr. McArther's treatment was not considered?

**A.** No. We've already covered that. That was a mistake that that got in the letter.

**Q.** So GEICO's position is that it did not refuse to consider them due to overlapping vehicle losses. And that's what I'm trying to figure out. Other than the gap in treatment that GEICO is alleging, is there any other reason why it refused to consider the medical treatment with Dr. McArther and subsequently the MRI?

**MS. MALATESTA:** I'm going to object to the form of the question.

**A.** The letter in the response gives the basis for the offer and it is -- it clearly states a gap in treatment.

**Q.** (By Mr. Hamilton) Are there any other reasons? I know what the letter says, we've gone over it. I'm trying to determine, are there other reasons beyond this alleged gap in treatment?

**A.** Again, I'm not a witness. I didn't adjust the claim. These folks are tasked with looking at the claim as a whole. And a gap in treatment was an important part of it. But we look at all aspects of the claim.

**MR. HAMILTON:** All right. And this is another issue that we'll take up with the judge.

*Id*. at p. 51-53.

Again, Plaintiff was entitled to know the full basis of the decision of GEICO as to the denial of Plaintiff's claim. A corporation or other organization issued a Rule 30(b)(6) notice of deposition has a duty to make a conscientious, good-faith effort to designate persons having knowledge of the matters sought, and to prepare those persons so that they can answer the examining party's questions <u>fully, completely, and unevasively</u>. *Wultz v. Bank of China, Ltd.,* 293 F.R.D. 677, 680(S.D.N.Y. 2013); *Booker v. Mass. Dept. of Public Health*, 246 F.R.D. 387 (D. Mass. 2007).

While nothing had previously been stated in discovery or GEICO's Answer as to the basis for the denial beyond what was set forth in it's letter stating that it was due to a "large gap in treatment" and "overlapping vehicle losses," Plaintiff was entitled to obtain an answer to this direct inquiry so as to avoid attempts by GEICO at a trial by ambush. Instead of responding in a direct manner, GEICO chose to play fast and loose with its phrasing by claiming that "The letter outlines the reason for the evaluation *to include* the gap in treatment" but then refuses to commit to that being the only reason for the denial of the claim. GEICO continued its refusal to directly answer the question by stating "[a]nd a gap in treatment was an important part of it. But we look at all aspects of the claim." Again, GEICO refused to outline what "other aspects of the claim" led to its decision to deny Plaintiff's claim, instead engaging in a hide-the-ball type of response.

VI. <u>*GEICO Witness Was Unable to Testify When GEICO Ascertained Their Stated Reason for Denying to Claim Based on "Overlapping Losses" Was an Error*</u>

> **Q.** (By Mr. Hamilton) Okay. I'm just trying to -- referencing overlapping vehicle losses, GEICO referenced that it was refusing to consider some of the medical treatment due to overlapping vehicle losses, correct?
>
> **A.** That's what the letter says. And I've already testified that that was put in there by mistake.

**Q.** I understand. But that was GEICO's position at the time, correct? You understand that today you're stating that's a mistake but at this time GEICO, at the time of the letter, indicated that it was refusing to consider some of the medical treatment due to overlapping vehicle losses, correct?

**MS. MALATESTA:** Object to the form of the question.

**Q.** (By Mr. Hamilton) Mr. Fike, did GEICO refuse to consider some of Ms. Wray's medical treatment due to overlapping vehicle losses?

**A.** No.

**Q.** Okay. So this letter that states the reason why some of Ms. Wray's medical treatment was not considered, how do you explain the existence of this letter stating that as being a reason based on your testimony saying that it's not a reason why?

**A.** There were no injur- -- when you look at those losses, there were no injuries involved. Those were property damages losses that showed up on an itemization of losses that were connected to Ms. Wray. And that was picked up by the adjuster in error and put in here. She had nothing to -- it was simply an error in putting that in there. Those were property damage losses that were not used to affect the evaluation of the claim.

**Q.** Okay. When did GEICO become aware that those losses did not involve an injury?

**A.** I don't know the answer to that.

**Q.** You understand you're testifying here today as GEICO not as Stephen Fike? And you're stating you do not know when GEICO realized --

**A.** I am relatively -- my guess is sometime after these letters were written when you finally called it to our attention.

**Q.** But as far as date when that occurred, you can't testify, you have -- you're saying that you as GEICO do not know when that error was discovered?

**A.** Not the exact date, no.

**Q.** And is that information that you could have ascertained by looking at claim notes or internal information; is that something that would have been reflected? I guess, Mr. Fike, I'm trying to determine, that's something that you could have ascertained, could you not have?

**A.** I don't know if that was available for me in the information that was produced by my lawyers. I don't recall seeing it in that information.

**Q.** So whether they ascertained that -- whether GEICO ascertained that these overlapping vehicle losses did not involve injury, you can't say whether that happened prior to making the offer to Ms. Wray or after making the offer to Ms. Wray?

**A.** I know it happened after, I just cannot give you a date.

**Q.** Okay. And you can't give me a date whether that happened within a few weeks, a few months or a few years?

**A.** I think it was a good while after that. I think you're the one that disclosed that to us and asked about it. And upon that being brought to our attention, we looked in to it and said, yeah, that was a mistake. These were property damage losses that did not impact the evaluation of the claim.

Id. at p. 26-30.

Again, GEICO was tasked with knowing specific details as it pertained to when GEICO realized/determined that its claim of "overlapping vehicle losses" was specious – particularly in light of the fact that one of their defenses centers around the allegation that they did not consider this factor in adjusting Plaintiff's claim, despite their letter stating to the contrary. Rule 30(b)(6) specially provides that "[t]he persons that are designated shall testify as to matters <u>known or reasonably available to the organization</u>." When a person is selected who does not have personal knowledge of the matters about which the noticing party is interested, the designee must be prepared by the organization so that he or she may give knowledgeable answers. *W Holding Co*

*v. Chartis Ins. Co. of Puerto Rico.,* 300 F.R.D. 43, 46 (D.P.R. 2014). And it is also encumbent upon counsel to prepare the witness appropriate to comply with ethical obligations. "Counsel for the entity should prepare the designated witness to be able to provide meaningful information about any designated area(s) of inquiry." *QBE Ins. Corp.,* at 676, 691. citing <u>ABA Standards</u>, 19(f) (Duty to Prepare the Witness).

VII. *Consequences of a Making a Bad Faith Designation*

"Producing an unprepared witness is tantamount to a failure to appear." *Resolution Trust Corp. v. Southern Union,* 985 F.2d at 197*; U.S. v. Taylor*, 166 F.R.D. 356, 361. "The rule provides for a variety of sanctions for a party's failure to comply with its Rule 30(b)(6) obligations, **ranging from the imposition of costs to preclusion of testimony and even entry of default.**" *QBE Ins. Corp.,* at 676, *12 (S.D. Fla. 2012) [emph. added]; *Sprague v. Independent Bank*, 2016 WL 6778931(M.D. Fl. 2016); *Strategic Decisions, LLC v. Martin Luther King, Jr. Ctr for Nonviolent Social Change Inc.,* 2015 WL 12156138 at *7 (N.D. Ga. 2015); *Quantum Capital, LLC v. Banco De Los Trabajadores*, 2015 WL 12156138 (S.D. Fl. 2015). "The failure to properly designate a Rule 30(b)(6) witness can be deemed a nonappearance justifying the imposition of sanctions." *Id.* See also, *Resolution Trust Corp. v. Southern Union Co., Inc.*, 985 F.2d 196, 198 (5th Cir.1993)); *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 305 (3d Cir.2000) (pointing out that a 30(b)(6) witness who is unable to give useful information is "no more present for the deposition than would be a deponent who physically appears for the deposition but sleeps through it"). When a party fails to comply with Rule 30(b)(6), Rule 37 allows courts to impose various sanctions, including the preclusion of evidence. See FED.R.CIV.P. 37(b)(2)(B); see, e.g., *Commodity Futures Trading Comm'n v. Noble Metals Int'l*, Inc., 67 F.3d 766, 770-71 (9th Cir. 1995).

As a general rule, a corporation will be "precluded from asserting a position at trial different than the position taken at its deposition, or any position at trial where none was taken during the deposition and the information forming the basis of that position was known or reasonably available to [the corporation] prior to or during the deposition." *U.S. v. Taylor*, 166 F.R.D. 356, 362. When a corporation's designee answers with a "we-don't-know" response, this response should be binding on the corporation and prohibit it from offering evidence at trial on those points. As stated in *QBE Insurance Corp.*, "the lack of knowledge answer is itself an answer which will bind the corporation at trial." *QBE Insurance Corp.*, 277 F.R.D. 676, 690. Furthermore, "[a] corporation which provides a 30(b)(6) designee who testifies that the corporation does not know the answers to the questions will not be allowed effectively to change its answer by introducing evidence at trial." *Id.* The reasoning behind this is that a "lack of knowledge response at the 30(b)(6) deposition is, for all practical purposes a variation on the rule and philosophy against trial by ambush." *Id.*, citing *Calzaturficio*, 201 F.R.D. at 38; *Wilson*, 228 F.R.D. at 531; *Taylor*, 166 F.R.D. at 363 (rule prevents "sandbagging" and prevents corporation from making a "half-hearted inquiry before the deposition but a thorough and vigorous one before the trial").

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiff requests that the Court enter an Order:

(1) Binding GEICO to its non-responsive testimony by refusing to allow further explanation at trial as to what criteria GEICO uses to determine a "gap in treatment" or "large gap in treatment";

(2) Binding GEICO to its non-responsive testimony by refusing to permit GEICO to explain at trial what details or specific factors in relation to Ms. Wray's claim led GEICO to

conclude that there existed a "large gap in treatment" or "gap in treatment" that allegedly

warranted non-payment of the treatment and claim;

(3) Precluding GEICO from raising any defense or other reason for refusing to honor Wray's

claim under the policy beyond the alleged "large gap in treatment;"

(4) Reconvening the recessed deposition of GEICO, which Plaintiff recessed due to the

conduct of the witness in refusing to respond to questioning, and compelling GEICO to

pay all attendant costs of the resumed deposition and to fully, completely, and accurately

answer all questions posed by counsel; and

(5) Awarding attorneys' fees and expenses incurred in brining the present motion, as well as

all attendant costs and attorney's fees that will be incurred in resuming the recessed

deposition.

**This the 27th day of November, 2020.**

Respectfully Submitted,

___/s/ R. Kevin Hamilton_____
R. Kevin Hamilton (MSB # 100886)
The Hamilton Law Firm
P. O. Box 1511
Meridian, MS 39302-1511
(601) 969-4114 phone
(888) 855-0691 fax
khamilton@thehamiltonlawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that a copy of this document was filed using the court's ECF system,
which in turn sent copies of same to the following counsel of record:

JOHN A. WAITS
CHRISTY MALATESTA
DANIEL COKER HORTON & BELL, P.A.
4400 OLD CANTON ROAD, SUITE 400
POST OFFICE BOX 1084

JACKSON, MISSISSIPPI 39215-1084
TELEPHONE: (601) 969-7607
FACSIMILE: (601) 969-1116

**This the 27th day of November, 2020.**

  /s/  R. Kevin Hamilton
  R. Kevin Hamilton