UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

NICHOLE WRAY AND
ZACHARY STERDIVANT PLAINTIFFS

V. CIVIL ACTION NO. 3:18-CV-622-DPJ-FKB

GEICO INDEMNITY COMPANY DEFENDANT

ORDER

This insurance dispute is before the Court on Defendant Geico Indemnity Company's ("GEICO") motion for partial summary judgment [65]. Geico seeks dismissal of Plaintiffs' claims for breach of fiduciary duty, bad faith, and extra-contractual damages; Plaintiffs oppose the motion. As explained below, Geico's motion [65] is denied in part and granted in part.

I. Facts and Procedural History

In September 2015, Plaintiffs Nichole Wray and Zachary Sterdivant were involved in a hit-and-run accident and suffered personal injuries. Compl. [1] at 2. At the time, Wray was insured by Defendant Geico; her policy included uninsured-motorist coverage.

On April 29, 2016, Wray, through her attorney, demanded the policy limit of $25,000 as compensation for her injuries. Wray Demand [85-1] at 3. In support, she described the medical treatment she received following the accident and referenced medical bills totaling $15,411.20. *Id.* at 1–3. Geico responded in writing on July 22, 2016, stating:

> As per your voicemail please note that the follow [sic] medical bills have not been considered due to the large gap in treatment and overlapping vehicle losses that your client was involved in after this date of loss.
>
> Anderson Health Providers on 03/23/2016 in the amount of $500.00
>
> Anderson MRI on 03/23/2016 in the amount of $1100.00
>
> McArthur Chiropractic on 11/02/2015–03/04/2016 in the amount of $2,790.00

Martina Letter [85-3] at 2. The mention of "overlapping vehicle losses" refers to two property-damage-only parking-lot accidents that Wray was involved in after the subject accident. *Id.* Geico has admitted that referencing those subsequent accidents was a mistake. Martina Dep. [85-6] at 99–100 (identifying the reference as a mistake because the subsequent accidents did not involve any injuries). On October 27, 2016, Geico offered $11,721.20 to settle Wray's claim. Fuentes Letter [85-2] at 1.

That same day, counsel for Wray contacted Geico and discussed the offer with Trina Hartfield. Call Records [85-5] at 23; Recording [68]. Hartfield reiterated that the $11,721.20 offer, which was less than Wray's medical expenses, was based in part on the gap in treatment. Recording [68]. She specifically identified the treatment rendered by McArthur Chiropractic between November 2015 and March 2016, the MRI on March 23, 2016, and the charges from Anderson Health Providers on March 23, 2016. *Id.*

Hartfield also referenced the previously mentioned overlapping vehicle losses, explaining that it was unclear if the later treatment for injuries was related to this accident or a subsequent parking-lot accident in February 2016. *Id.* But Hartfield admitted to knowing nothing about the subsequent accident. *Id.* Towards the end of the call, Hartfield summarized the status of settlement negotiations: Wray had demanded $25,000; Geico presented a counteroffer of $11,721.20. *Id.* Hartfield inquired if counsel had a counterdemand; he did not. *Id.* Hartfield asked when he might submit a counterdemand; he stated he needed to talk to his client. *Id.* Hartfield then said that if Geico did not hear back within a few days, it would follow up by phone on November 3, 2016; counsel agreed. *Id.*

At this point, meaningful communication between Geico and Wray ceased. According to Geico's records, it repeatedly contacted Wray's counsel in November 2016, December 2016, and

January 2017, to solicit a counterdemand and further discuss settlement. Call Records [85-5] at 21–23. Fuentes noted speaking with the law firm on February 9, 2017, advising that Geico had not received a counteroffer or rejection. *Id.* at 21. The firm representative told Fuentes she would give the attorney a message to follow up. *Id.* Follow-up calls were made by Geico on March 6, March 24, April 19, May 16, June 2, June 21, July 19, August 9, August 24, September 12, October 12, November 1, November 28, December 13, and December 21, 2017. *Id.* at 16–23. None of the calls appeared productive—repeatedly, messages were left to have the lead attorney follow up or return the call.[1]

The claim remained open, and Geico continued to place calls to Wray's counsel (and leave messages) in 2018. *Id.* at 12–16 (reflecting outbound calls January–August 2018). On September 7, 2018, Plaintiffs filed this lawsuit seeking compensation for personal injuries under the policy, extra-contractual damages, and punitive damages. Compl. [1] at 2–4. According to Plaintiffs, Geico did "increase its offer" in September 2020. Pls.' Resp. [85] at 6.

In their Complaint, Plaintiffs focus on Geico's mistaken reference to overlapping vehicle losses early in the negotiation. Compl. [1] at 3. They assert that Geico "failed to ascertain whether the previous claim involved personal injuries at all, and let alone whether the injuries were relevant to the present injury claim." *Id.* They say Geico "failed to properly investigate Wray's claim" and breached its duty of good faith and fair dealing, giving rise to a claim for consequential and extra-contractual damages. *Id.* They extend this logic to their claim for punitive damages, insisting that Geico's "unfair[ ] adjusting . . . on the basis of the insured having a prior claim, without regard to whether the claim was for personal injuries, evinces

[1] Plaintiffs deny that some off these calls were received but admit to receiving at least a dozen calls between November 2016 and December 217. Wray's Resps. to Reqs. for Admis. [65-4] at 3–5.

willful and wanton disregard for the rights of" its insureds. *Id.* at 3–4. Geico seeks summary judgment on both the extra-contractual-damages and punitive-damages claims and the claim for breach of fiduciary duty.

II. Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals "no genuine dispute regarding any material fact and that the movant is entitled to judgment as a matter of law." The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A showing is insufficient if no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves*, U.S. at 150. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an

adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

III. Analysis

Geico moved for partial summary judgment, seeking dismissal of Plaintiffs' claims for breach of fiduciary duty, extra-contractual damages, and punitive damages. Stated simply, neither side handled this dispute particularly well. Plaintiffs' counsel, after learning that Geico was offering less than the initial settlement demand based on overlapping vehicle losses, appeared to stop communicating with Geico. According to Geico, Plaintiffs never submitted a counterdemand, and Plaintiffs have not argued otherwise. Meanwhile, Geico admits that it was error to cite the overlapping vehicle losses as a basis for reducing its offer. Yet it failed to timely catch and correct this error or amend its offer. It is this failure that underpins Plaintiffs' claims for extra-contractual and punitive damages.

A. Extra-contractual Damages

Turning first to Plaintiffs' claim for extra-contractual damages, the parties both acknowledge that extra-contractual-compensatory damages—to include reasonable attorneys' fees, court costs, inconvenience, emotional distress, and other economic damages—may be recoverable even if punitive damages are not appropriate. *Landrum v. Conseco Life Ins. Co.*, No. 1:12-CV-5-HSO-RHW, 2013 WL 6019303, at *8 (S.D. Miss. Nov. 13, 2013); *see* Pls.' Resp. [85] at 13–14; Def.'s Mem. [66] at 12–13. As explained by the Mississippi Supreme Court in *Universal Life Insurance Co. v. Veasley*, "it is entirely foreseeable by an insurer that the failure to pay a valid claim through the negligence of its employees should cause some adverse result to the one entitled to payment." 610 So. 2d 290, 295 (Miss. 1992).

Here, Geico's July 22, 2016 offer letter referenced "overlapping vehicle losses that your client was involved in after this date of loss." Martina Letter [85-3] at 2. When the author of that letter was deposed, she seemed genuinely surprised by the reference to overlapping losses.

> Q. Okay. What overlapping vehicle losses were you referring to?
>
> A. That doesn't make any sense. Sorry. Just give me one moment to read it. Damn, that's got to be a mistake.
>
> Q. Okay. And tell me why you say that.
>
> A. Because that wouldn't have any bearing.
> (Witness crying.)
>
> Q. Okay. And why would that not have any bearing?
>
> A. Well this is an offer for, you know, bodily injury. So these accidents we just talked about were not involving any injuries.

Martina Dep. [65-3] at 99 (deposition pagination); *see* Fike Dep. [85-7] at 21 ("So that's a mistake. Those losses did not involve injury. It's just a mistake on the part of the adjuster by putting that in there. It's not part of her evaluation.").

Plaintiffs say Geico failed to identify its mistake, revisit its position, or conduct further investigation into Wray's injuries in a timely manner. Admittedly, Plaintiffs' counsel could have been more responsive during the process. But he did specifically ask Geico representative Trina Hartfield to tell him "more about" the overlapping losses during an October 2016 phone call. Recording [68] at 8:20. Hartfield responded that Wray had a second accident in February 2016, and when counsel asked her to tell him more about that accident, she stated, "Oh, I don't know anything about that." *Id.* at 9:06. Nevertheless, Hartfield explained that Geico attributed treatment received in 2016 to the February 2016 accident, not the subject September 2015 accident. *Id.* at 9:25. Counsel pressed again, asking, "But you all don't know anything about the

nature of the accident that happened in February?" *Id.* at 9:27. Hartfield responded, "We know it was a parking-lot accident." *Id.* at 9:36.

Plaintiffs claim that Geico then failed to reevaluate its offer or look more closely at the "overlapping loss" theory. Instead, Geico did nothing and waited until September 15, 2020, to increase its $11,721.20 offer—more than four years after Plaintiffs' initial demand, two years after Plaintiffs filed suit, and one month after Martina's deposition. Pls.' Resp. [85] at 6.

In response, Geico argues that extra-contractual damages are not available because it did not deny Plaintiffs' claim. Def.'s Mem. [66] at 13. But Geico has not paid Plaintiffs' claim either, and other courts have found that the issue of extra-contractual damages should be considered by the jury in cases of delayed payment. *Landrum*, 2013 WL 6019303, at *12 (holding that "if Conseco did not have a reasonably arguable basis to delay the payment of the proceeds . . . then Conseco has materially breached the terms of the Policy and is subject to liability for extra-contractual damages"); *see also Est. of Minor v. United Servs. Auto. Ass'n*, 247 So. 3d 1266, 1273 (Miss. Ct. App. 2017) (finding question of fact on extra-contractual-damages claim over insurer's decision to "deny or delay payment"); *Veasley*, 610 So. 2d at 296 (affirming "the assessment of actual damages caused by the anxiety resulting from delay without an arguable reason"). At minimum, Plaintiffs have identified a question of fact whether extra-contractual damages are appropriate. Geico's motion for partial summary judgment on Plaintiffs' claim for extra-contractual damages is denied.

B. Punitive Damages

Punitive damages, though not normally recoverable in cases of breach of contract, are available where "the breach results from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an independent tort." *Caldwell v. Alfa Ins. Co.*, 686 So. 2d

1092, 1095 (Miss. 1996) (quoting *Blue Cross & Blue Shield v. Maas*, 516 So. 2d 495, 496 (Miss. 1987)). "The denial of a claim without proper investigation may give rise to punitive damages." *United Am. Ins. Co. v. Merrill*, 978 So. 2d 613, 635 (Miss. 2007) (quoting *Lewis v. Equity Life*, 637 So. 2d 183, 187 (Miss. 1994)). And proper investigation "means obtaining 'all available medical information relevant to [the policyholder's] claim.'" *Id.* (quoting *Lewis v. Equity Nat. Life Ins. Co.*, 637 So. 2d 183, 187 (Miss. 1994)) (alteration in original).

Plaintiffs assert that Geico failed to continue to investigate the claim after its counteroffer, neglected to subject Wray to an independent medical examination (as it was entitled to do under the policy), and declined to consult a medical expert. Pls.' Resp. [85] at 13. They also point out that when Geico did increase its settlement offer in 2020, it did so without the benefit of any additional medical information. *Id.* at 6.

There is, of course, another side to the story. After Plaintiffs' counsel learned that Geico offered less than Wray's demand because of overlapping vehicle losses, he apparently chose not to submit a counterdemand or further discuss the claim with Geico. In *Sobley v. Southern National Gas Co.*, the Fifth Circuit reiterated that "although an insured may argue there should have been a more complete investigation, 'there simply was no bad-faith breach of any duty to the insured who passively accepted the fact finding of the insurer's investigation.'" 302 F.3d 325, 339 (5th Cir. 2002) (quoting *Dueringer v. Gen. Am. Life Ins. Co.*, 853 F.2d 283, 287 n.8 (5th Cir. 1988)). Moreover, while bad faith can exist when claims are delayed rather than denied, "Mississippi courts are skeptical of such claims." *James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65, 69 (5th Cir. 2014). So Plaintiffs' case is not particularly strong.

That said, the facts underlying Plaintiffs' bad-faith claim overlap with the facts supporting their claim for extra-contractual damages—a claim that will be presented to the jury.

In addition, the Court will have an opportunity to revisit this claim after the evidence is presented. "If and only if the trier of fact does award compensatory damages, then the court shall promptly commence an evidentiary hearing to determine whether punitive damages may be considered by the same trier of fact." *Landrum*, 2013 WL 6019303, at *7 (citation and internal quotation marks omitted).

Under these circumstances, the Court finds Geico's motion as to the punitive-damages claim should likewise be denied. *See Merrill*, 978 So. 2d at 635 ("Where the parties dispute the existence and legitimacy of the carrier's reason for delay or denial, these issues are ones of material fact, and the plaintiff is entitled to have a jury pass upon his claim for punitive damages if reasonable minds could differ as to the legitimacy of the carrier's reason.") (citation and internal quotation marks omitted).

### C. Breach of Fiduciary Duty

While Geico's motion primarily addresses the extra-contractual-damages and punitive-damages claims, Geico does include a request to dismiss Count Three, which it describes as a breach-of-fiduciary-duty claim. Def.'s Mem. [66] at 13. Geico says there is no fiduciary relationship between an insurance company and its insured under a first-party insurance contract. *Id.* (citing *Szumigala v. Nationwide Mut. Ins. Co.*, 853 F.2d 274, 280 n.7 (5th Cir. 1988)). Plaintiffs do not respond to this argument. Accordingly, any breach-of-fiduciary-duty claim is dismissed.

## IV. Conclusion

The Court has considered all arguments raised by the parties; those not addressed would not have changed the outcome. Defendant's motion for partial summary judgment [65] is denied

as to the extra-contractual-damages and punitive-damages claims and granted as to the breach-of-fiduciary-duty claim.

The parties are directed to contact Courtroom Deputy Shone Powell no later than August 23, 2021, to set this case for a status conference.

**SO ORDERED AND ADJUDGED** this the 19th day of August, 2021.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE