UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

NICHOLE WRAY AND
ZACHARY STERDIVANT                                                                   PLAINTIFFS

V.                                                           CIVIL ACTION NO. 3:18-CV-622-DPJ-FKB

GEICO INDEMNITY COMPANY                                                              DEFENDANT

ORDER

This insurance dispute is before the Court on Defendant Geico Indemnity Company's motion [76] to limit and exclude certain options of Plaintiffs' expert, L. Craig Nierman. Plaintiffs oppose the motion. As explained below, Geico's motion [76] is granted.

Plaintiffs filed this lawsuit against Nichole Wray's uninsured-motorist insurance carrier, Geico. The present motion relates to the report of L. Craig Nierman, an expert retained by Plaintiffs. Geico takes issue with Section IV of his report [81-1], arguing that it "consists chiefly of impermissible legal conclusions and opinions[.]" Def.'s Mem. [77] at 2. Geico also says Nierman cannot provide an opinion on Geico's net worth based on information he accessed on Geico's website. *Id.* at 8.

I.      Standard

Geico relies on Federal Rule of Evidence 702, invoking the Court's gatekeeper function. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 n.7 (1993). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  In other words, "[t]he Court must determine whether (1) the expert is qualified by special knowledge, (2) his opinion is relevant, and (3) [it] has a reliable basis." *Howell v. Imperial Palace of Miss., LLC*, No. 1:09-CV-7-LG-JMR, 2011 WL 13195946, at *1 (S.D. Miss. Jan. 11, 2011) (citing *Daubert*, 509 U.S. at 589).

Whether a proposed expert should be permitted to testify under Rule 702 "is case, and fact, specific."  *Hodges v. Mack Trucks Inc.*, 474 F.3d 188, 194 (5th Cir. 2006) (citation omitted).  And the decision to admit or exclude evidence is within the discretion of the trial court.  *Howell*, 2011 WL 13195946, at *1 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141–46 (1997)); *see Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990) (noting decision of trial judge to allow expert testimony "is given broad discretion and will only be reversed if the decision is manifestly erroneous").

As to the scope of expert testimony, "[a]n opinion is not objectionable just because it embraces an ultimate issue."  Fed. R. Evid. 704(a).  "Nevertheless, an expert may never render conclusions of law."  *Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009) (citing *Snap-Drape, Inc. v. Comm'r*, 98 F.3d 194, 198 (5th Cir. 1996)).  "[I]t is the Court's job—not an expert witness's—to instruct the jury as to the applicable law."  *Mears v Jones*, No. 1:17-CV-6-KS-MTP, 2019 WL 3483157, at *1 (S. D. Miss. July 31, 2019).  "Nor, may an expert go beyond the scope of his expertise in giving his opinion."  *Goodman*, 571 F.3d at 399 (citing *First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136 (5th Cir. 1996)).

II.     Analysis

    A.     Legal Conclusions

Nierman's report includes multiple sections, encompassing the policy and coverage at issue (sections I and II), Wray's injuries (section III), Wray's demand and Geico's response (section IV), Geico's internal guidelines and industry standards (section V), applicable Mississippi law (section VI), and Geico's assets and income (section VII).

In particular, Geico takes issue with section VI, describing it as "dedicated to what [Nierman] believes to be the relevant Mississippi law for the case[.]" Def.'s Mem. [77] at 7; *see* Pls.' Resp. [81] at 2 (noting Geico asks the court to "redact or exclude parts of section VI"); Def.'s Reply [83] at 2–5 (focusing on section VI). Nierman then "goes on to provide his opinions as to how he believes 'Geico did not abide by Mississippi law.'" Def.'s Mem. [77] at 7. (quoting Report [81-1] at 7, section VI heading); *see* Report [81-1] at 8 ("Thus, Geico's conduct did not conform with the standards established by Mississippi law.").

This tension between what an expert in an insurance dispute can and cannot say is a recurring theme in insured-insurer litigation. As concisely explained by Judge Lee,

> it is for the court, and not [the expert], to determine, and to instruct the jury, as to the carrier's legal obligations to its insured. However, [the expert] may testify regarding relevant industry standards applicable to the adjustment of claims and may address whether defendant's conduct conformed to those standards; but he will be precluded from asserting any opinion that defendant lacked "good faith" or that it acted in "bad faith" in adjusting and denying the claim, as this is patently a legal conclusion.

*Rosamond v. Great Am. Ins. Co.*, No. 3:10-CV-263-TSL-MTP, 2011 WL 4433582, at *5 (S.D. Miss. Aug. 4, 2011) (citing *200 South Broad Street, Inc. v. Allstate Ins. Co.*, No. 07-9237, 2009 WL 2028349, at *1 (E.D. La. July 9, 2009) (holding that expert could testify to industry standards regarding claims adjustment but could "not testify as to whether the defendant's

behavior constituted bad faith nor draw any legal conclusions whatsoever as to the defendant's conduct")).

The same is true here. Expert testimony by Nierman regarding industry customs and standards and his "opinions regarding the alleged inappropriateness of [Geico's] actions in the investigation/adjustment of plaintiff's claims, which may include his opinion as to the respective duties of the insurer and insured in the context of claims adjustment[,]" are permissible. *Haymore v. Shelter Gen. Ins. Co.*, No. 3:19-CV-365-TSL-RHW, 2020 WL 1536571, at *4 (S.D. Miss. Mar. 30, 2020) (denying motion to strike this type of expert testimony).[1] But Nierman "will not be permitted to testify that [Geico] lacked a legitimate or arguable basis for denial of his claim or acted in bad faith." *Id.* (granting motion to strike testimony amounting to opinions on legal issues).

Of course, much of the industry customs and standards are drawn from duties established by Mississippi law. *See Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988) (noting "a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible"). So, a blanket exclusion of section IV may not be appropriate. Obviously, legal pronouncements, such as "The way Geico treated Ms. Wray did not comply with applicable law," are not permitted. Report [81-1] at 7. But many of the duties outlined by Mississippi law (and mentioned in the report) need to be conveyed to the jury.

Because this testimony primarily relates to the punitive-damages claim, which will be bifurcated, the Court finds this issue should be revisited, if necessary, during that phase of trial. At the appropriate time, the Court will consult with the parties and address how best to

---

[1] Both sides cite *Haymore* in support of their arguments. *See* Pls.' Resp. [81] at 3–8; Def.'s Reply [83] at 1–3.

4

communicate the applicable law to the jury.[2]  Defendant's motion is granted to the extent it seeks to limit Nierman's testimony.

      B.      Geico's Net Worth

Lastly, Geico seeks to exclude Nierman's opinion of its net worth, saying he merely obtained this information from Geico's website.  Def.'s Mem. [77] at 8.  The report states:

> VII.      GEICO ASSETS AND INCOME
>
> According to Geico's website, at the end of 2016 Geico has total assets of $8,166,875,658.00 (i.e., more than $8 billions).  It is total net worth is $4,598,208,484.00 (i.e., more than $4 billion). [sic]

Report [81-1] at 8 (footnotes omitted).  Geico argues that Nierman is not an accountant or an economist and is "not qualified to give an opinion as to Geico's net worth."  Def.'s Mem. [77] at 8.

Plaintiffs do not dispute that Nierman is not qualified to give this type of testimony.  Instead, they counter that, because the net worth was obtained directly from Geico's website, expert testimony is not required.  Pls.' Resp. [81] at 9.  They insist this evidence falls under Federal Rules of Evidence 801(d)(2) and 804(b)(3) and argue, "[p]rovided that this evidence can be authenticated at trial, it would be admissible under either or both of those rules."  *Id.*  In reply, Defendant acknowledges that "[t]o the extent that Geico's assts and net worth are disputed issues of fact . . . 'the jury is capable of assessing the evidence without expert input.'"  Def.'s Reply [83] at 5 (quoting *Haymore*, 2020 WL 1536571, at *2).

---

[2] The parties addressed Nierman's opinions in the bad-faith context, but if this testimony is relevant to the extracontractual-damages claim, "[t]he Court declines to sift through the [expert's report] line-by-line and separate the admissible opinions from the inadmissible ones."  *Mears*, 2019 WL 3483157, at *2.  Generally speaking, Nierman may not "provide legal opinion[,] . . . instruct the jury as to the applicable law[,]" or "directly tell the jury what result to reach in this case."  *Id.*  If clarification is necessary during the liability phase of trial, the parties are free to raise their concerns outside the presence of the jury.

The Court agrees; Nierman is not a qualified expert as to this testimony. And, even if he was, this evidence does not require expert testimony. Defendant's motion is granted to the extent it objects to Nierman's presentation of that evidence as part of his expert testimony.

III.   Conclusion

The Court has considered all arguments raised by the parties; those not addressed would not have changed the outcome. For the reasons stated, Defendant's motion to exclude [76] is granted as set out in this Order.

**SO ORDERED AND ADJUDGED** this the 19th day of August, 2021.

s/ *Daniel P. Jordan III*  
CHIEF UNITED STATES DISTRICT JUDGE